# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



| Everett McKinley Dirksen United States Courthouse<br>Room 2722 - 219 S. Dearborn Street<br>Chicago, Illinois 60604 | | Office of the Clerk<br>Phone: (312) 435-5850<br>www.ca7.uscourts.gov |

## NOTICE OF ISSUANCE OF MANDATE

February 19, 2015

To:     Jon W. Sanfilippo
        UNITED STATES DISTRICT COURT
        Eastern District of Wisconsin
        Milwaukee , WI 53202-0000

| No. 13-3577 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>TYRONE MCMILLIAN,<br>Defendant - Appellant |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:11-cr-00193-CNC-1<br>Eastern District of Wisconsin<br>District Judge Charles N. Clevert | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

PARTIAL RECORD RETURN          Record to be returned later

Exhibits to be returned later:          4

Sealed Envelopes to be returned later:          1

This notice sent to:

[ ]      United States Marshal                    [X]        United States Probation Officer

**NOTE TO COUNSEL:**
If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                         **Received by:**

_____2/19/15_____                    __s/D. McLeod Brock_____

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**CERTIFIED COPY**

## FINAL JUDGMENT

A True Copy

Teste:

January 27, 2015

*[signature]*

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Before:
    RICHARD A. POSNER, *Circuit Judge*
    KENNETH F. RIPPLE, *Circuit Judge*
    MICHAEL S. KANNE, *Circuit Judge*

|  | UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,* |
|---|---|
| No. 13-3577 | v.<br><br>TYRONE MCMILLIAN,<br>    *Defendant-Appellant.* |

| **Originating Case Information:** |
|---|
| District Court No. 2:11-cr-00193-CNC-1<br>Eastern District of Wisconsin<br>District Judge Charles N. Clevert, Jr. |

The defendant's conviction is **AFFIRMED**, but his sentence is **VACATED** and the case is **REMANDED** for resentencing.

The above is in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)



A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 13-3577

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TYRONE MCMILLIAN,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:11-cr-00193-CNC-1 — **Charles N. Clevert, Jr.,** *Judge.*

———————————

ARGUED DECEMBER 9, 2014 — DECIDED JANUARY 27, 2015

———————————

Before POSNER, RIPPLE, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* A jury convicted the defendant after a one-week jury trial of four counts of violating 18 U.S.C. § 1591(a), which mainly, so far as relates to this case, punishes anyone who "knowingly—(1) in or affecting interstate … commerce … recruits … a person … knowing, or in reckless disregard of the fact … that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." If convicted the defendant is to be impris-

oned "for not less than 10 years or for life." § 1591(b)(2). One of the defendant's recruits had attained the age of 18 (in fact was 19), and as to her the government had also to prove, and did prove, that the defendant used "force, threats of force, fraud, [or] coercion … or any combination of such means" against her. § 1591(a). The sentencing range for that offense is 15 years to life, see *id*. and § 1591(b)(1), as is the range if the victim is under 14, *id*., but none of the defendant's recruits was that young.

The defendant was convicted under other statutes as well as 18 U.S.C. § 1591, but we can skip them, as they did not affect his sentence. His guidelines range was life imprisonment (a range rather than a point because the length of a prisoner's life can't be determined at the time of sentencing), but the judge imposed a below-guideline sentence of 30 years.

The defendant had recruited a young woman—the 19-year-old—and three girls to engage in prostitution. Two of the girls were 16 and the third was 17. Mainly he had enticed all four by false promises of love and money, though he also used violence on occasion, particularly against the oldest, Jessica, for various infractions such as disobeying him or talking too loudly. She assumed he would be even more violent if she tried to stop working as a prostitute for him, as she wanted to do.

He had transported all four of his recruits across state lines to engage in prostitution and thus had operated his prostitution ring in interstate commerce. Relying on *Bond v. United States*, 134 S. Ct. 2077 (2013), he argues that section 1591 reaches only involuntary prostitution akin to slavery and not "ordinary" pimping and pandering, but there is no

No. 13-3577                                                                3

basis for so limited an interpretation. His further argument
that the four recruits were volunteers and thus not "caused"
by him to engage in prostitution overlooks the absence of
any evidence that had he not recruited them they would still
have become prostitutes. By enticing them, buying them
cellphones, taking photos of them and posting advertise-
ments on Craigslist for their services as prostitutes, instruct-
ing them on how to take calls and deal with Johns, and then
driving them to and from their "dates" with their customers,
the defendant caused them to engage in prostitution. He
used both force and fraud on Jessica, and his use of fraud
was alone enough to establish a violation of section 1591(a)
with respect to her, even though she was older than 18. As
for possible long-term effects on his recruits from their em-
ployment by him as prostitutes, however, the evidence is
sparse and inconclusive.

The defendant could have been sentenced to life in
prison, and, since he was only 31 when sentenced, his 30-
year sentence although very long is not even a de facto life
sentence. But he argues that it is invalid as a violation of the
ex post facto provision of the Constitution.

The defendant had begun recruiting the young woman
and the three girls into prostitution in 2006 and the first half
of 2007, and on November 1, 2007, the U.S. Sentencing
Commission revised two of the sentencing guidelines appli-
cable to his conduct, U.S.S.G. §§ 2G1.1 and 2G1.3, and those
were the guidelines that the judge used to determine his
guidelines range. He contends that their application to him
violated the Constitution's ex post facto clause, which has
been interpreted to serve the twin purposes of "assur[ing]
that legislative Acts give fair warning of their effect and

permit individuals to rely on their meaning until explicitly changed," and "restrict[ing] governmental power by restraining arbitrary and potentially vindictive legislation." *Weaver v. Graham*, 450 U.S. 24, 28–29 (1981). The sentencing guidelines are not "legislation" or "legislative Acts," or indeed "laws" in any conventional sense now that sentencing judges are no longer bound by them. But the Supreme Court has ruled that they are "laws" for purposes of the ex post facto clause, *Peugh v. United States*, 133 S. Ct. 2072, 2078 (2013), since they influence federal sentencing. Under the old guidelines, the ones in force before November 1, 2007, the defendant's guidelines range would have been, not life, but 360 months (30 years) to life. A 360-month sentence, which is the sentence the judge imposed, would then have been a sentence at the bottom of the guidelines range, rather than, as the judge treated it, a sentence below the range.

It seems unlikely that this would have made a difference in the sentence. A range of 30 years to life is large for a 31 year old, as he is likely to live well beyond 61 (moreover, with good-time credit, he is likely to be released in his late 50s rather than at 61); how likely is it that the judge would go below it? But who can know? If the range should have been not life but 30 years to life, the district judge would have to be asked whether that might make a difference to the sentence he would impose, thus requiring a remand. See *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir. 2005). The government argues that life in prison, not 30 years to life, was the proper range after all, but the judge did not respond to the argument.

There is no ex post facto problem with respect to the defendant's prostituting Jessica, for she continued to work as a

prostitute for him after the change in the guidelines—and possibly with respect to another of the prostitutes as well, Cherish, who may still have been working for him in November 2007, though the record is unclear. *United States v. Vallone*, 752 F.3d 690, 698–99 (7th Cir. 2014). As for the two or possibly (given the uncertainty about Cherish) three girls who did not work for the defendant after the guidelines change, the government, insisting that his sentence with regard to them should also be governed by the new rather than the old guidelines, invokes U.S.S.G. § 1B1.11(b)(3). That is the so-called "one-book rule," according to which "if the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses."

The rule is not statutory, and so does not bind a sentencing judge. It's true that the statute tells judges to apply the guidelines in effect at the time of sentencing, 18 U.S.C. § 3553(a)(4)(A)(ii), but that requires qualification. Suppose the defendant commits a federal crime in 2010, is sentenced in 2014, and in between the guidelines are amended to increase the sentence for his crime; to apply the later guideline would violate the ex post facto clause.

The reason given for the one-book rule is that "applying various provisions taken from different versions of the Guidelines would upset the coherency and balance the Commission achieved in promulgating the Guidelines. Such an application would also contravene the express legislative objective of seeking uniformity in sentencing." *United States v. Stephenson*, 921 F.2d 438, 441 (2d Cir. 1990). But whatever the merit of the rule (actually just a policy statement, see

U.S.S.G. § 1B1.11, hence nonbinding, *United States v. Reyes-Medina*, 683 F.3d 837, 841–82 (7th Cir. 2012)), it should not be applied indiscriminately. For example, it should not be applied in a case in which the victim of the old offense is different from the victim of the new one. To apply the rule in such a case would mean that if the defendant robbed a person before the applicable guideline was increased and a different person after, the higher guideline would apply to the first robbery as well as to the second. Yet there would be no reason to punish the defendant under a guideline not in force then. It would be different if the defendant were convicted not of two separate crimes, but of one, such as conspiracy to rob, or some other continuing offense that had embraced both crimes. *United States v. Hallahan*, 756 F.3d 962, 977–79 (7th Cir. 2014). But our defendant was convicted not of conducting a pimping enterprise but of committing four separate violations of 18 U.S.C. § 1591(a), each violation being limited to one of the four persons whom he recruited for the enterprise.

Two or three of the girls quit their jobs with the defendant before the guidelines change; why should the defendant be punished as if they had continued working for him? But the defendant's suggestion that the earlier guidelines should also apply to his offense against the adult, Jessica, is unsound. That would have made sense had Jessica quit before the guidelines change, but she had not. There was no reason for the sentencing judge to give the defendant a break just because he had begun his criminal activity earlier with her than with the three girls.

The government has an alternative argument against application of the ex post facto bar in this case. It points out

that closely related offenses can be "grouped," U.S.S.G.
§ 3D1.2, and treated as one offense. But offenses against dif-
ferent people can't, with irrelevant exceptions, be grouped.
See U.S.S.G. § 3D1.2 and the Commentary to that subsection.
And even if they could be, we would have some hesitation
about relying on this argument. *United States v. Fletcher*, 763
F.3d 711, 717 (7th Cir. 2014), and cases cited there, hold that
grouping should be permitted to circumvent the ex post
facto clause because the grouping rules provide notice to the
defendant that should he commit a fresh crime after the
guidelines range for that crime is raised he can be sentenced
under the new range for a crime he committed before the
change, provided it is grouped with the crime he committed
after the change. The government contends that a criminal,
and indeed everyone else, is charged with detailed and pre-
cise knowledge of every edition of the guidelines manual,
including the nigh-unintelligible provisions relating to
grouping, and therefore acts at his peril, so far as his poten-
tial sentence is concerned, in engaging in any criminal act
without careful prior study of the applicable edition. There
are cases that support the government's position, see, e.g.,
*United States v. Vivit*, 214 F.3d 908, 919 (7th Cir. 2000); *United
States v. Pagán-Ferrer*, 736 F.3d 573, 597–99 (1st Cir. 2013);
*United States v. Siddons*, 660 F.3d 699, 707 (3d Cir. 2011);
*United States v. Weiss*, 630 F.3d 1263, 1276–78 (10th Cir. 2010),
but they can be criticized as carrying the proposition that ig-
norance of the law is no defense to a preposterous extreme.
Cf. *Lambert v. California*, 355 U.S. 225, 228–30 (1957). But that
is an issue for another day. Because the victims of the defen-
dant's four offenses were different, the offenses were not
"groupable." The old (pre-November 1, 2007) guidelines

manual was therefore applicable to the crimes that the defendant completed before November 2007.

The district judge seems not to have realized that the guidelines range had changed over the course of the defendant's illegal activity. So far as appears, he thought that the guidelines range when the defendant committed the offenses that were completed before the range changed was life, which it wasn't; it was lower (30 years to life). Had he known this, he might have imposed a lower sentence than he did. The defendant is therefore entitled to be resentenced.

Several more issues remain to be addressed. The defendant argues that the court improperly increased his guidelines range because of his use of a computer. See U.S.S.G.§ .3(b)(3)(B). He points out that Application Note 4 states that "Subsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor. Accordingly, the enhancement in subsection (b)(3) would not apply to the use of a computer or an interactive computer service to obtain airline tickets for the minor from an airline's Internet site." But the note is wrong. The guideline section provides a 2-level enhancement whenever the defendant uses a computer to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor," which the defendant did when he created Craigslist pages on which to advertise Jessica's and the girls' services as prostitutes. When an application note clashes with the guideline, the guideline prevails. *Stinson v. United States*, 508 U.S. 36, 38 (1993).

It's true that *United States v. Patterson*, 576 F.3d 431, 443 (7th Cir. 2009), applied the application note, despite its inconsistency with the guideline, without attempting to distinguish, or even citing, *Stinson*. But *Patterson* is distinguishable from the present case, because the government there had conceded, albeit erroneously, that the application note controlled; we had no reason to reject a party's concession regarding an issue raised by its opponent.

Moreover, any doubt about the applicability of *Stinson* to the computer-use guideline is dispelled by the lengthy analysis of the issue in *United States v. Pringler*, 765 F.3d 445, 451–55 (5th Cir. 2014). And as pointed in that opinion, "the [computer-use] enhancement would not have been applicable [in *Patterson*], irrespective of application note 4," because "neither the defendant nor someone part of the same criminal activity used a computer to solicit patrons," *id*. at 454 n. 4, as was done in both *Pringler* and our case today. Essentially, then, the statement in *Patterson* about the application note is dictum.

The defendant argues that the judge erroneously applied U.S.S.G. § 2G1.3(b)(2)(B), which imposes a two-level enhancement if the defendant "unduly influenced a minor to engage in prohibited sexual conduct." He argues that there was not enough evidence that he unduly influenced Jade (one of the girls who worked for him as prostitutes). But he made false promises to her (that they'd be together, rich and famous, etc.), which are forms of undue influence, especially over a minor.

The final issue is the conditions of supervised release. The required term of supervised release, given the defendant's prison sentence, was five years. As is typical of the

*insouciance* with which the bar and the bench treat supervised release, only the probation service made any recommendations regarding conditions of supervised release to impose on the defendant. The recommendations are perfunctory, probably because the probation service was recommending life imprisonment and therefore pointed out that "it seems disingenuous to recommend a term of supervised release when recommending a sentence of life imprisonment." (See *United States v. Vance*, 764 F.3d 667 (7th Cir. 2014), where we discussed "Lazarus" conditions—conditions of supervised release to take effect upon the completion of a sentence of life imprisonment—after the man reported in chapter 11 of the *Gospel of John* to have risen from the dead.)

The probation service recommended 6 conditions of supervised release (actually 5, two of the conditions being essentially duplicates of each other), all mandatory for sex offenders but one seemingly irrelevant to our defendant—a requirement of mental health treatment even though the motive for his pimping was financial rather than sexual.

The judge was casual about the conditions. His printed judgment imposes on the defendant 5 mandatory conditions of supervised release, 13 standard conditions, and 6 additional conditions of which 3 duplicate the listed mandatory or standard conditions. The additional conditions that are not duplicates require the defendant to register with state and local authorities as a convicted sex offender, participate in a mental health assessment and treatment program for sex offenders, and provide his probation officer with access to financial information. (The registration requirement is superfluous, since it is a matter for state and local authorities to

determine.) That makes a total of 21 conditions of supervised release excluding the duplicates, all to go into effect when the defendant is released from prison, when he will be as we said about 60 years old.

At the sentencing hearing the judge imposed the standard conditions without naming any of them, without giving a reason for any of them, and without attempting to correct any of the ambiguities in the standard conditions that we noted in *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014); cf. *United States v. Goodwin*, 717 F.3d 511, 524–25 (7th Cir. 2013)**.** He did recite several of the mandatory conditions, as well as the three nonduplicative additional conditions. Why the judge mentioned these conditions of supervised release and not the others is unexplained.

*All* components of a sentence must be stated in the oral sentence. This is apparent from Fed. R. Crim. P. 35(c), which states: "'Sentencing' Defined. As used in this rule, 'sentencing' means the oral announcement of the sentence." See also the 2004 advisory committee note to the rule; cf. *United States v. Johnson*, 765 F.3d 702, 710–11 (7th Cir. 2014); *United States v. Baker*, 755 F.3d 515, 523–24 (7th Cir. 2014); *United States v. Alburay*, 415 F.3d 782, 788 (7th Cir. 2005)**.** Failure to disambiguate ambiguous conditions is another error. *United States v. Siegel, supra,* 753 F.3d at 714–16; *United States v. Goodwin, supra,* 717 F.3d at 524–25. However, the defendant's lawyer chose not to challenge any of the conditions of supervised release.

We'll mention just one of the ambiguities. Standard condition 9 states that "the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony, unless granted

permission to do so by the probation officer." There is no stated requirement that the defendant know, believe, or even suspect that he is associating with a criminal or a felon. Many criminals try to conceal their criminal activity; many persons with a felony conviction try to conceal the conviction; and many convicted felons go straight after being convicted and serving their sentence—what is the danger of associating with *them*? Also, the word "associate" in the condition is vague.

The standard conditions are not mandatory; a sentencing judge needn't impose them, or may if he prefers impose them in modified form. A sensible alternative to the language of standard condition 9 would be: "the defendant shall not meet, communicate, or otherwise interact with a person whom he knows to be engaged, or planning to be engaged, in criminal activity."

In addition to considering the proper wording of the conditions he imposes, a sentencing judge must (as we said) include all the conditions he is imposing in his oral sentence, must give reasons for imposing them, and must consider the propriety of imposing them in light of the sentencing factors listed in 18 U.S.C.§ 3553(a), which apply to all nonmandatory aspects of the sentence, including conditions of supervised release. *United States v. Goodwin*, *supra*, 717 F.3d at 523–26; *United States v. Monteiro*, 270 F.3d 465, 472–73 (7th Cir. 2001). None of that was done in this case.

To summarize, the defendant's conviction is affirmed, but his sentence is vacated and the case is remanded for resentencing. We trust that on remand the district judge will not only reconsider the prison sentence in light of the applicable guidelines range, but also reconsider the conditions of

No. 13-3577                                                    13

supervised release in light of our discussion in this and our
previous opinions.